## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NUCITY PUBLICATIONS, INC.,
Individually and on Behalf of All
Others Similarly Situated,

    Plaintiff,

v.

VISA U.S.A., INC., and MASTERCARD
INTERNATIONAL INCORPORATED,

    Defendants.

**05 CV 5991**

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

JUN 2 8 2005

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, NuCity Publications, Inc., on its own behalf, and on behalf of a class of all others similarly situated, brings this class action Complaint ("Complaint") for damages and injunctive relief under the federal antitrust laws against the Defendants and, demanding a trial by jury, complain and allege as follows:

## JURISDICTION AND VENUE

1.    This Complaint is filed pursuant to §§ 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) to recover treble damages and obtain injunctive relief, as well as the costs of suit, including reasonable attorney's fees, against the Defendants, for the injuries that Plaintiff and the members of the class have sustained by reason of the Defendants' violations of § 1 of the Sherman Act (15 U.S.C. § 1).

2.    This Court has jurisdiction over this action pursuant to § 1331 of Title 28, United States Code, and §§ 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26)

3.    Venue is proper in this district pursuant to § 22 of Title 15, United States Code, and § 1391 (b), (c) and (d) of Title 28, United States Code. Defendants reside, transact business,

maintain offices, have agents, and/or are found within this district. A substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described in this Complaint has been carried out, within this district.

## THE PARTIES

4.     Plaintiff NuCity Publications, Inc. ("NuCity") is a corporation organized and existing under the laws of the state of New Mexico with its principal place of business located at Albuquerque, New Mexico is engaged in the business of publication of a weekly newspaper and, during the relevant period accepted Visa branded and MasterCard branded credit cards for payment. NuCity, pursuant to an agreements with Visa and MasterCard member acquirers, conveyed Visa and MasterCard card charges to the acquirers for which it was paid the face amount of the charge less a discount (the "merchant discount") which was primarily comprised of an interchange fee unlawfully fixed by the Defendants.

5.     Visa U.S.A. is a membership corporation which is organized as an open joint venture and is owned by its member banking institutions. Visa U.S.A. is organized under the laws of the state of Delaware and has its principal place of business in Foster City, California. Visa U.S.A. is a member of Visa International and is the only Visa International member operating in the United States. Visa U.S.A. licenses the Visa brand from Visa International and sublicenses the Visa brand to its issuing member banks.

6.     Visa International is a Delaware corporation organized as a membership association and has its principal place of business in Foster City, California. Its members include both individual banks and "group members," such as Visa U.S.A. and Visa Canada. Visa International owns the Visa brand name and licenses that brand to its members, including Visa U.S.A.. Visa

2

International is divided into six geographical regions and each region is entitled to elect a minimum of two and a maximum of eight representatives to Visa International's 26-member Board of Directors.

7.     The Visa International's Board of Directors has exclusive authority to regulate interregional matters and oversight authority over intraregional matters which may have a significant effect on the worldwide Visa program. The power to determine whether a matter falls within Visa International's regulatory orbit lies ultimately with the Visa International Board. All of the matters complained of in this Complaint were either actions taken by Visa International jointly with Visa U.S.A., encouraged and/or approved by Visa International, and/or constituted matters on which Visa International had the power and duty to pre-empt Visa U.S.A. actions and policy. For that reason, unless otherwise stated, the term "Visa" as used in succeeding paragraphs of this Complaint refers to both Visa U.S.A. and Visa International.

8.     MasterCard International Inc. ("MasterCard") is a Delaware membership corporation with its principal place of business located in Purchase, New York. It is a subsidiary of MasterCard Incorporated, a Delaware corporation. The principal members of MasterCard are banks and other domestic and foreign financial institutions some of whom, among other things, are licensed to issue MasterCard branded credit cards.

9.     With respect to the matters alleged in this Complaint Visa and MasterCard were and are engaged in interstate commerce.

10.    The acts charged in this Complaint to have been done by the Defendants were authorized, ordered and done by its officers, directors, employees, agents, members or representatives while actively engaged in the management, direction, control or transaction of the

3

business or affairs of the Defendants.

11. Various other persons, firms or corporations not made defendants in this lawsuit have participated as co-conspirators with each of the Defendants in the illegal activities charged in this Complaint and have performed acts and made statements in furtherance of the illegal combination and conspiracy. These co-conspirators include the banks or other organizations who are members of the Defendants Visa or MasterCard.

## THE OPERATION OF THE VISA AND MASTERCARD NETWORKS

12. Visa, U.S.A. and MasterCard are major U.S. network systems in the payment card industry. They are both sometimes referred to in this complaint as "networks."

13. Visa and MasterCard are organized as open joint ventures, owned by the numerous banking institutions that are members of their networks.

14. All of the members of Visa and MasterCard agree to abide by the respective Associations' by-laws and other regulations including those at issue in this Complaint.

15. Neither Visa nor MasterCard are "single entities." The member banks in each network, many of which are common, set the policies, rules and regulations of the networks. The rules, regulations and policies which the networks establish through their member banks, including those which are complained of in this Complaint, constitute horizontal agreements among the respective members of the networks.

16. Many banking institutions were contemporaneously members of both the Visa and MasterCard networks during the period covered by this Complaint.

17. MasterCard is owned by its approximately 20,000 member banks.

18. Visa U.S.A. is owned by its approximately 14,000 member banks.

4

19.     Visa and MasterCard are largely funded through service and transaction fees paid by their members.

20.     A member bank of the MasterCard and Visa networks may function as an "issuer" of credit cards, as an "acquirer" of credit card transactions or both.

21.     A member bank serving as an issuer issues branded credit cards (Visa, MasterCard or both) to cardholders. Cardholders may use their Visa or MasterCard credit card to access a line of credit with their issuing bank to effect purchases with merchants who accept those cards.

22.     A member bank serving as an acquirer acquires the Visa and/or MasterCard credit card transactions of merchants with whom the acquirer has acquiring agreements.

23.     Typically, when a Visa or MasterCard cardholder uses a Visa or MasterCard credit card to pay for goods or services, the accepting merchant transmits the transaction information to the acquiring bank which has contracted to acquire its transactions. The acquirer processes and packages that information and transmits it to the Visa or MasterCard network. The network relays the transaction information to the cardholder's issuing bank, which approves the transaction if the cardholder has a sufficient credit line. Approval is then sent by the issuer to the acquirer, which relays the approval to the merchant who completes the transaction.

24.     A payment request is then sent by the merchant to the acquirer for the purposes of collecting for the merchant the amount due from the transaction from the issuing bank. The acquirer forwards the payment request to the issuer. The issuer then forwards to the acquiring bank the amount of the transaction less a fee (known as the interchange fee). The acquirer then forwards that net amount, less any other fees, to the merchant or for the credit of the merchant.

25.     Pursuant to rules of both the Visa and MasterCard networks, Visa transactions must

5

be approved, cleared and settled through the Visa network and MasterCard transactions must be approved, cleared and settled through the MasterCard network.

26.     The interchange fee deducted from the transaction amount by the issuer is fixed by the Visa and MasterCard networks acting through their members who are horizontal competitors.

27.     The total of the interchange fee and any other fees charged to the merchant by the acquirer is referred to as the "merchant discount". The interchange fee is the largest component of the merchant discount.

28.     The interchange fee constitutes horizontal price fixing. By its operation and intent, the interchange fee functions as a fixed price floor under the merchant discount, fixing most of the fees paid by the merchant to the acquirer.

29.     Interchange fees paid by merchants through the merchant discount increase the marginal costs incurred by merchants.

30.     Interchange fees are not necessary to the existence or efficient operation of the Visa or MasterCard payment networks.

31.     Interchange fees do not achieve efficiencies in the Visa or MasterCard payment networks.

32.     Plaintiff and members of the class can not feasibly avoid the payment of interchange fees by using another payment network.

33.     Interchange fees and the merchant discount which have existed during the period relevant to this complaint and which currently exist have been, and are, higher than they would have been or would be, if they would have existed at all, absent the Defendants' violations of law described in this Complaint.

6

34.     Anticompetitive and collusively set interchange fees have the effect of increasing merchant discounts and in turn retail prices above what they would be absent such fees and induce the use of less efficient payment systems. The fixing of interchange fees constitute a per se violation of § 1 of the Sherman Act and/or an unreasonable restraint of trade under the Rule of Reason.

35.     Interchange fees have been subject to significant scrutiny by regulators in other countries because they result from the exercise of market power and are not competitively set.

36.     There is no meaningful or effective competition with respect to interchange fees among the networks.

37.     The networks have enacted additional rules, regulations, practices and policies which preclude such competition and are part of the unreasonable restraints of trade complained of in this Complaint.

38.     One of these restraints was addressed in prior litigation. Prior to the successful litigation by the government of the United States v. Visa case, the networks prohibited its members from issuing American Express or Discover cards. That rule was invalidated in the U.S. v. Visa case.

39.     Among the other rules, regulations, practices and policies of Visa and MasterCard which constitute unreasonable restraints of trade and are intended to and in fact serve to support the illegal price fixing of interchange fees and the merchant discounts, include (i) prohibiting their members from bypassing their networks in clearing and settling transactions, (ii) prohibiting the co-branding of credit cards, prohibiting members from steering purchasers to a particular network and (iii) prohibiting merchants from surcharging credit card transactions. All of these restraints are anticompetitive and either lack any procompetitive justification or any procompetitive justifications

7

they may have are substantially outweighed by their anticompetitive effects.

40.     There are at least two product markets relevant to the violations of law alleged in this Complaint. The first is the market for general purpose credit cards and charge cards. The second is the network services market for general purpose credit and charge cards. Visa and MasterCard have market power in both markets with respect to the conduct alleged in this Complaint. They possess and have exercised the power to control interchange and merchant discount prices and to exclude competition in network services. Their market power is also evidenced by their substantial market shares in the relevant markets.

41.     The relevant geographic market within which the defendants have exercised market power is the United States.

42.     As a result of the defendants violations of the antitrust laws, interchange fees and the merchant discounts are higher than they would have been absent the restraints and competition and innovation has been restrained in the network services market.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff bring this action, pursuant to Rules 23 (b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a class composed of all merchants who have paid merchant discounts in connection with MasterCard or Visa credit card transactions which they have accepted since January 1, 2004 ("the Class").

44.     The members of the class are so numerous and geographically dispersed that joinder of all class members in this action is impracticable.

45.     Plaintiff's claims are typical of the claims of the members of the Class, because plaintiff and the members of the Class were damaged by the same wrongful conduct of the

8

defendants, and will continue to be damaged and/or are threatened with such damage in the absence of injunctive relief.

46.     Plaintiff will fairly and adequately protect the interests of the Class. The interests of the plaintiff are coincident with, and not antagonistic to, those of the Class. In addition, plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

47.     Questions of law and fact are common to the members of the Class and predominate over questions which may affect only individual members.

48.     Defendants have acted on grounds generally applicable to all members of the Class with respect to the matters alleged in this Complaint.

49.     Among the questions of law and fact common to the Class are:

     a.     Whether the member banks in each of the Visa and MasterCard networks engaged in a contract, combination or conspiracy to raise, fix, maintain or stabilize the interchange fee and the merchant discount charged to merchants who accept Visa or MasterCard credit cards;

     b.     The duration and extent of the contract , combination or conspiracy;

     c.     The mechanisms used to accomplish the contract, combination or conspiracy;

     d.     Whether the defendants violated § 1 of the Sherman Act; and

     e.     The effect of the contract, combination or conspiracy on the levels of the interchange fee and merchant discount paid by the plaintiff and the members of the class.

50.     Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged in this Complaint. Such treatment will permit the large number of similarly situated persons to prosecute their common claims in a single forum,

simultaneously, efficiently and without unnecessary duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by members of the class for whom individual litigation would be economically infeasible.

51. There are no unusual difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### (15 U.S.C. § 1)

52. Plaintiff incorporates by reference the allegations contained in ¶¶ 1-51 and incorporates them fully.

53. Beginning prior to January 1, 2004 and continuing through the present, the defendants and their co-conspirators engaged in continuing combinations, contracts and conspiracies to unreasonably restrain trade and commerce in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

54. The contract combination and conspiracy with respect to each of the networks consists of a continuing agreement among the members of the respective networks to establish, raise, fix and maintain at artificially high levels the interchange fee and merchant discounts.

55. Each of the contracts combinations and conspiracies consists also in the promulgation and enforcement of policies rules and regulations designed to insure the efficacy of their price fixing agreements including prohibiting their members from bypassing their networks in clearing and settling transactions, prohibiting the co-branding of credit cards, prohibiting members from steering purchasers to a particular network and prohibiting merchants from surcharging credit card transactions.

10

56.     For the purpose of forming and effectuating each of the combinations, contracts and conspiracies alleged in this complaint, the defendants and their co-conspirators did those things they combined and conspired to do, including establishing, in concert, the interchange fee as a component of the merchant discount and the policies, rules and regulations referred to in this Complaint.

57.     The contracts, combinations and conspiracies alleged in this Complaint have had the following anticompetitive effects, among others.

a.     Interchange fees and merchant discounts are now, and have been, fixed, raised, maintained and stabilized at artificially high levels;

b.     Merchants have been deprived of the benefits of free and open competition; and

c.     Price competition has been restrained and suppressed.

58.     As a result of defendants' conduct, plaintiff and the members of the class have been injured in their business and property.  Plaintiff and the members of the class suffered, and continue to suffer, antitrust injury as a result of the defendants' imposition of a price-fixed and artificially high interchange fee and merchant discount.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays:

A.     That the court determine that this action may be maintained as a class action and direct that reasonable notice of this action be given the members of the Class;

B.     That the defendants' action alleged in this Complaint be adjudged and decreed to be in violation of § 1 of the Sherman Act;

C.     That plaintiff, the Class  and each member of the Class recover damages, trebled as

provided by law, determined to have been sustained by reason of the defendants' antitrust violations;

D.       That the defendants be enjoined from continuing the illegal course of conduct alleged

in this Complaint;

E.       That plaintiff and the Class recover their costs of this suit including reasonable

attorneys' fees; and

F.       That plaintiff and the Class be granted such other, further and different relief as the

nature of the case may require or as may be just and proper.

## JURY DEMAND

Take notice that plaintiff and the Class demand a trial by jury of all issues triable as of right

by jury.

DATED: June 28, 2005                        Respectfully Submitted,

Stanley M. Grossman (SG-4544)
POMERANTZ HAUDEK BLOCK
 GROSS LLP
100 Park Avenue, 26th Floor
New York, NY 10017
Telephone:     (212) 661-1100
Facsimile:     (212) 661-8665

HULETT HARPER STEWART LLP
DENNIS STEWART
STEPHANIE L. DIERINGER
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone:     (619)338-1133
Facsimile:     (619) 338-1139

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
BONNY E. SWEENEY
CHRISTOPHER M. BURKE
401 B. Street, Suite 1700
San Diego, CA 92101
Telephone:     (619) 231-1058
Facsimile:     (619) 231-7423

FREEDMAN BOYD DANIELS HOLLANDER
  & GOLDBERG, PA
JOSEPH GOLDBERG
20 First Plaza, Suite 700
Albuquerque, NM 87102
Telephone:     (505) 842-9960
Facsimile:     (505) 842-1925

FINE KAPLAN AND BLACK, R.P.C.
DONALD L. PERELMAN
1845 Walnut Street, 23rd Floor
Philadelphia, PA 19103
Telephone:     (215) 567-6565
Facsimile:     (215) 568-5872

GUSTAFSON GLUEK PLLC
DANIEL E. GUSTAFSON
725 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone:     (612) 333-8844
Facsimile:     (612) 339-6622

SCHRAG & BAUM PC
THOMAS F. SCHRAG
JAMES S. BAUM
MICHAEL L. SCHRAG
280 Panoramic Way
Berkeley, CA 94704
Telephone:     (510) 849-1618
Facsimile:     (510) 841-6050

LANGER & GROGAN, P.C.
HOWARD I. LANGER
1600 Market Street, Suite 2020
Philadelphia, PA 19103-7218
Telephone:    (215) 419-6536
Facsimile:    (215) 419-6546

**Attorneys for Plaintiffs**

#83106

14